UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

G&D FURNITURE HOLDINGS, INC.,

    Plaintiff,

v.

SUNTRUST BANK,

    Defendant.

Civil Action No. TDC-16-2020

## MEMORANDUM OPINION

Plaintiff G&D Furniture Holdings, Inc. ("G&D") has filed this civil action against Defendant SunTrust Bank ("SunTrust"), alleging that SunTrust improperly removed funds from its bank account and never returned the full amount taken. Pending before the Court is Defendant SunTrust Bank's ("SunTrust") Motion to Dismiss the First Amended Complaint. The Motion is fully briefed and ripe for disposition, and no hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

G&D, a Maryland corporation, entered into a commercial banking relationship with SunTrust, a Georgia-based bank doing business in Virginia. At some point in April 2013, SunTrust withdrew $133,656.69 from G&D's account. Later, SunTrust returned $49,151.54 to the account, but failed to return the remaining amount. G&D claims that it is owed $84,505.00 as a result of SunTrust's improper withdrawal of funds from its account.

G&D filed this lawsuit on April 26, 2016, in the Circuit Court for Prince George's County, Maryland. SunTrust removed the action to this Court on June 10, 2016. G&D filed an Amended Complaint on July 12, 2016. The Amended Complaint alleges that SunTrust is liable for breach of the Rules and Regulations governing SunTrust deposit accounts (Count I), breach of the debtor-creditor relationship formed when G&D opened its SunTrust account (Count II), a violation of public banking laws and regulations (Count III), breach of a bailment relationship (Count IV), breach of fiduciary duty (Count V), and conversion (Count VI). G&D seeks judgment in the amount of $85,000 in compensatory damages, $500,000 in punitive damages, interest, and costs.

SunTrust filed its Motion to Dismiss on August 26, 2016, seeking the dismissal of all claims against it. On September 12, 2016, G&D filed an Opposition to the Motion in which it agreed voluntarily to dismiss the claim that SunTrust had violated public banking laws and regulations (Count III) and the claim for breach of fiduciary duty (Count V). SunTrust filed a Reply Memorandum on September 27, 2016. On October 10, 2016, G&D filed a Response to SunTrust's Reply Memorandum. On October 25, 2016, G&D filed a Supplemental Response to SunTrust's Reply Memorandum. The Court construes both the Response to the Reply and the Supplemental Response to be sur-reply briefs filed without leave of the Court and therefore strikes them on that basis. *See* D. Md. Local R. 105.2(a).

## DISCUSSION

In its Motion, SunTrust asserts that G&D's claims should be dismissed because they are time-barred. SunTrust further argues that G&D's breach of contract claims in Counts I and II are insufficiently pleaded, the common law bailment claim fails because a depository account does not create a bailment, and the conversion claim fails because under Maryland law money cannot

be converted. G&D contends that it has adequately pleaded the breach of contract claims and that SunTrust's legal arguments concerning the law of bailment and conversion are incorrect.

**I.   Legal Standard**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**II.   Statute of Limitations**

Under Maryland law, a civil action must be filed within three years from the date it accrues. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (2011). According to SunTrust, all of G&D's claims are time-barred because they accrued as of April 12, 2013, more than three years before G&D filed its original Complaint on April 26, 2016. In support of this argument, SunTrust asks the Court to take judicial notice of the opinion of the Supreme Court of Virginia in *PS Business Parks, L.P. v. Deutsch & Gilden, Inc.*, 758 S.E.2d 508 (Va. 2014). In that opinion, the court found the following facts relevant to the present case. PS Business Parks obtained a judgment for unpaid rent against a company called Deutsch & Gilden, Inc. ("Deutsch & Gilden"), which maintained an account at SunTrust. *Id.* at 509-10. The Deutsch & Gilden account was related to G&D's account through a "treasury management service" which drew money each day from the Deutsch & Gilden account into G&D's account and moved funds back

3

from G&D's account into the Deutsch and Gilden account on an as-needed basis for operational expenses. *Id.* at 510. PS Business Parks filed a garnishment summons, naming SunTrust Bank as garnishee, against "some other debt due or property of the judgment debtor [Deutsch & Gilden], specifically all accounts, including account ending 61663." *Id.* On April 12, 2013, SunTrust filed with the Circuit Court of Fairfax County, Virginia a check in the amount of $133,656.69 drawn from an account ending in 61663 held by G&D, not Deutsch & Gilden. *Id.* When G&D filed a motion to quash the garnishment summons, the court granted the motion and ordered SunTrust to return the balance to G&D "as if the garnishment had not been filed." *Id.* at 511. The Supreme Court of Virginia affirmed that order. *See id.* at 511-12.

According to SunTrust, *PS Business Parks* establishes that the funds at issue in the present case were withdrawn from G&D's account on April 12, 2013, because the opinion states that SunTrust's check, drawn from the G&D account in response to the garnishment summons, was deposited with the court on that date. G&D argues that SunTrust's analysis impermissibly relies on facts outside the pleadings, and that even if the Court takes the *PS Business Parks* opinion into account, SunTrust has not correctly identified the date the claim accrued. According to G&D, the cause of action accrued on October 30, 2014, when the Fairfax County Circuit Court ordered SunTrust to return the wrongfully garnished funds to G&D, but SunTrust failed to return $84,505 of the funds. In the alternative, G&D asserts that the cause of action accrued in early May 2013, when G&D received its monthly account statement, dated April 30, 2013, and actually discovered that SunTrust had taken the money.

The Court declines SunTrust's invitation to take judicial notice of the facts set forth in *PS Business Parks*. Only indisputable facts are susceptible to judicial notice. *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 n.* (4th Cir. 2004). "Indisputable facts" are those that are

4

"generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Facts adjudicated in an earlier case, however, "do not meet either test of indisputability contained in Rule 201(b)." *United States v. Zayyad*, 741 F.3d 452, 464 (4th Cir. 2014). Consequently, the Court will not, at the motion to dismiss stage, rely on the facts set forth in *PS Business Parks* or G&D's Opposition to the Motion. *See Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (stating that in resolving a motion to dismiss the Court considers only matters of public record and attached documents "integral to the complaint"). The parties must establish the circumstances of the withdrawal and the date on which it occurred through evidence presented at a later stage of the proceeding.

Even if the Amended Complaint had alleged that the funds were withdrawn on April 12, 2013, or on a date preceding April 26, 2013, that fact would not necessarily warrant dismissal on statute of limitations grounds. Under Maryland's "discovery rule," a claim in a civil action does not accrue until the plaintiff "in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981). The discovery rule is "a recognition that the Legislature, in employing the word 'accrues' in § 5-101 never intended to close our courts to plaintiffs inculpably unaware of their injuries." *Murphy v. Merzbacher*, 697 A.2d 861, 865 (Md. 1997). The Maryland Court of Appeals has held that the discovery rule applies to contractual disputes. *See Bragunier Masonry Contractors, Inc. v. Catholic Univ. of Am.*, 796 A.2d 744, 758 (Md. 2002). Thus, whether a statute of limitations defense would succeed would depend on the resolution of the factual question of when G&D discovered, or should have discovered, the unauthorized withdrawal. Here, the Amended Complaint does not answer that question, and G&D, in noting that it did not receive the account statement memorializing that transaction until

May 2013, denies that it knew or should have known of the improper withdrawal before April 26, 2013. Thus, even if the Court were to accept the proffered facts, SunTrust's argument for dismissal on statute of limitations grounds would fail.

### III.   Breach of the Debtor-Creditor Relationship

In Count II, which alleges a "Breach of the Debtor-Creditor Relationship," G&D alleges that when it entered into a commercial banking deposit relationship with SunTrust, SunTrust agreed explicitly and implicitly to "handle the bank account of G&D as a debtor-creditor relationship." Am. Compl. ¶ 10. According to G&D, SunTrust violated that agreement when it improperly withdrew funds from SunTrust's account and refused to return them. SunTrust contends that Count II should be dismissed because Maryland law does not recognize an cause of action for breach of the debtor-creditor relationship.

G&D's claim in Count II is essentially a breach of contract claim. In order to state a claim for breach of contract under Maryland law, "a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Northeast LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010). *See also DeCohen v. Capital One, N.A.*, 703 F.3d 216, 227 (4th Cir. 2012) (finding that the plaintiff stated a claim for breach of contract under Maryland law where he showed an obligation owed to him and that such obligation was breached).

Contrary to SunTrust's assertion, Maryland courts have long recognized that the relationship of a bank to its customer is "that of debtor and creditor," with "the rights of the depositor and the liability of the bank being contractual." *Taylor v. Equitable Trust Co.*, 304 A.2d 838, 842 (Md. 1973). Thus, there is a "contract that is implied in a banking relationship" that can be breached by "a wrongful disbursement of funds belonging to a depositor." *Id.* This

contract "implied in banking relations" includes an "obligation to pay the funds only as authorized." *Univ. Nat'l Bank v. Wolfe*, 369 A.2d 570, 571, 575 (Md. 1977); *Dunlop Sand & Gravel Corp. v. Hospelhorn*, 191 A. 701, 706 (Md. 1937) (stating that a "general deposit of money in a commercial bank" creates a "relation of debtor and creditor, the depositor having in addition to his rights as creditor certain contract rights against the bank").

Thus, under Maryland law, G&D's act of opening a deposit account with SunTrust created a debtor-creditor relationship with SunTrust that imposed contractual obligations on SunTrust. *See* Rules and Regulations for Deposit Accounts ("Rules and Regulations" or "R&R") at 1, Mot. Dismiss Ex. B, ECF No. 25-3 (stating that "the relationship between you and the Bank created by the opening of an Account is of debtor and creditor"). G&D has alleged that SunTrust, without authorization, paid out deposited G&D funds, then refused to make those funds available to G&D upon its request. These allegations, if true, would establish a breach of the implied contract between depositor and bank. *See Taylor*, 304 A.2d at 842; *Univ. Nat'l Bank*, 369 A.2d at 575. Accordingly, the Court finds that G&D has stated a claim by alleging that SunTrust breached its duties under the debtor-creditor relationship. The Court therefore denies the Motion as to Count II.

## IV. Breach of Bank Rules and Regulations

In Count I, "Breach of Bank Rules and Regulations," G&D claims that when it entered into a commercial banking deposit relationship with SunTrust, both parties agreed to abide by the Rules and Regulations," but SunTrust failed to comply with that agreement. SunTrust argues that G&D has not adequately alleged a breach of any contractual obligation arising from its Rules and Regulations. G&D, however, asserts that pursuant to the Rules and Regulations, SunTrust "agreed explicitly and impliedly to handle G&D's bank account with ordinary care and

to handle the account for the benefit of the customer." Am. Compl. ¶ 8. According to G&D, SunTrust breached its duties under the Rules and Regulations by failing to act with ordinary care when it refused to return all of the funds it had withdrawn. G&D has thus identified the contract in dispute, the Rules and Regulations. It has described the contractual obligation alleged to have been breached, specifically, SunTrust's agreement that it would handle G&D's account with ordinary care and for G&D's benefit. Finally, G&D has alleged the factual basis for the alleged breach, that SunTrust improperly withdrew money from G&D's account and refused to return it upon request. Where G&D has alleged that SunTrust agreed to be bound by certain requirements set out in the Rules and Regulations, and that SunTrust materially breached its obligations, the Amended Complaint, on its face, appears to state a plausible claim for breach of contract under Maryland law.

SunTrust further argues that despite these allegations, the Rules and Regulations either bar G&D's claims or provide no basis to support them. Although the Rules and Regulations were not attached to the Amended Complaint, during a case management conference on October 18, 2016, counsel for G&D assented to the Court's consideration of the Rules and Regulations, which were attached to SunTrust's Motion, as a document integral to the Amended Complaint. *See Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2016) (stating that consideration of a document attached to a motion to dismiss is permitted when "the document is integral to and explicitly relied on in the complaint" and the plaintiff does not challenge its authenticity).

Upon consideration of the Rules and Regulations, the Court disagrees with SunTrust's position that they bar G&D's breach of contract claim entirely. First, SunTrust argues that the Rules and Regulations specifically permit SunTrust to withdraw funds pursuant to a valid

garnishment order, such that "the alleged improper withdrawal was not improper." Mot. Dismiss at 9. This argument fails at the outset because endorsing it requires the Court to adopt the facts set out in *PS Business Parks* opinion, which the Court has already declined to do. Even if it did consider those facts, however, the provision authorizing garnishment does not foreclose G&D's claim. This provision, entitled "Legal Process Against Account," states in relevant part:

> If your Account is attached, garnished, or otherwise subject to levy by lawful legal action, we will not be liable to you for any sums we pay or freeze because of such attachment, garnishment, or other levy, even if paying or freezing the money from your Account leaves non-sufficient funds to pay a check you have written. After receiving legal process, we may freeze or remove the funds at issue from your Account and you agree that we are not required to pay interest on such funds.

R&R at 23. Although the Rules and Regulations permit SunTrust to pay or freeze funds pursuant to a "lawful" garnishment, the Amended Complaint does not allege the withdrawal of funds was pursuant to a lawful garnishment. Even if the Court were to consider the facts contained in *PS Business Parks*, the court in that case concluded that the garnishment order that led to the withdrawal was not lawful because PS Business had "no right to possession of the funds in G&D account 61663, and cannot subject those funds to garnishment" and thus ordered the funds to be returned "as if the garnishment had not been filed." *PS Business Parks*, 758 S.E.2d at 511-12. Moreover, the Amended Complaint does not merely allege that the funds were withdrawn; it also alleges that SunTrust failed to return $84,505. Thus, even if the funds were withdrawn pursuant to a valid garnishment order, the Court can discern no provision of the Rules and Regulations exculpating SunTrust for failing to return funds upon learning that the garnishment was defective. This provision therefore provides no basis for dismissing G&D's breach of contract claim.

SunTrust also points to a provision of the Rules and Regulations, under the heading "Statements," requiring G&D to "notify the Bank within 30 calendar days" in the event of any "unauthorized signature, alteration, misencoding or other error on the face of any item in your statement, or for any incorrect or improper amount, fee, interest calculation or other error on the statement itself (including any item improperly charged to your Account or any deposit not credited to your Account)." R&R at 33. This section further states that:

> If you claim a credit or refund because of a discrepancy or an unauthorized transaction, you agree to provide us with a declaration on a form we choose containing whatever information we request regarding the transaction, your Account and the circumstances surrounding the claimed loss. The Bank must receive your declaration within ten days of its request or it may deny the claim. You also agree to make a report of the unauthorized transaction to the police, and upon our request, to provide us with a copy of their report. We will have a reasonable period of time to investigate the claim and the surrounding circumstances . . . . You agree that you cannot and will not bring any legal action or arbitration claim against us unless you have first provided the declaration described in this section.

*Id.* at 33.

As an initial matter, it is not readily apparent that this provision applies to the circumstances of this case. G&D has not alleged an "unauthorized signature, alteration, misencoding," or an "error" on its statement; rather, it alleges that SunTrust improperly withdrew funds from its account without authorization and failed to return them. To the extent that G&D has arguably alleged an "unauthorized transaction," the requirement that an account holder contact the police suggests that this provision concerns conduct by an unauthorized third party rather than by SunTrust itself. In any event, to the extent that this clause provides a defense to any claim, the Court disagrees with SunTrust's assertion, apparently based on the flawed premise that this provision is a species of jurisdictional exhaustion requirement, that G&D's allegations cannot move forward because G&D did not allege in the Amended

10

Complaint that it followed these procedures. G&D is not required to allege in its complaint facts sufficient to refute a defense. *Goodman v. Praxair*, 494 F.3d 458, 466 (4th Cir. 2007) (stating that a plaintiff is not required to "plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised"). At this stage of the case, there are simply insufficient facts for the Court to assess whether this provision governs the factual circumstances described in the Amended Complaint and whether the process described in the Rules and Regulations was required or followed in this instance. The Court concludes that this provision is more appropriately raised as an affirmative defense rather than a basis for dismissal under Rule 12. Thus, the Court rejects the argument that the Rules and Regulations explicitly bar G&D's claims.

The Court, however, agrees with SunTrust that G&D has not adequately stated a claim for breach of the Rules and Regulations. The only specific provision G&D alleges to have been breached is the requirement, under the section "Collection of Items," that "[i]n receiving items for deposit or collection, we act as your collection agent and assume no responsibility beyond the exercise of ordinary care." R&R at 14. "Collection" refers to "the process of special handling of an item, including presenting the item for payment." *Id.* SunTrust thus asserts that this requirement of ordinary care is limited to actions relating to deposit and collection activities and does not apply to matters such as garnishment. *See* Mot. Dismiss at 8.

The terms "deposit" and "collection," as used in this provision, do not appear to encompass an unauthorized withdrawal. G&D does not provide sufficiently detailed facts to assess whether the removal of funds from its account, or the failure to return funds to its account, is subject to the duty of ordinary care referenced in this provision. Nor does G&D identify in its Amended Complaint any other provision of the Rules and Regulations, whether relating to

"ordinary care" or otherwise, that SunTrust breached. To the extent that G&D relies on the language in the Rules and Regulations, referenced in its brief, stating that "the relationship between you and the Bank created by the opening of an Account is of debtor and creditor," R&R at 1, that provision simply supports its claim in Count II and does not provide an independent breach of contract theory that would support a separate count. Under these circumstances, the Court agrees that G&D has not provided sufficient detail to state a plausible claim for a breach of contract claim arising from the Rules and Regulations that is separate from the claim in Count II. *See Iqbal*, 556 U.S. at 678. The Court therefore dismisses Count I without prejudice.

### V. Bailment

A bailment is "the relation created through the transfer of the possession of goods or chattels, by a person called the bailor to the person called the bailee, without a transfer of ownership, for the accomplishment of a certain purpose, whereupon the goods or chattels are to be dealt with according to the instructions of the bailor." *Gen. Refining Co. v. Int'l Harvester Co.*, 196 A. 131, 135 (Md. 1938). Once a bailment relationship is established, certain responsibilities flow from that relationship. For example, the bailee, in accepting possession of the bailed property, assumes the duty of exercising "reasonable care in protecting it." *Broadview Apts. Co. v. Baughman*, 350 A.2d 707, 709 (Md. Ct. Spec. App. 1976) (citing *Hambleton v. McGee*, 19 Md. 43 (1862)). Count IV asserts that upon deposit of G&D's funds with SunTrust, a bailment was created under which G&D was the bailor of funds and SunTrust was the bailee, and SunTrust violated its duty to exercise ordinary care in protecting those funds when it improperly made a withdrawal from G&D's account and refused to return a portion of the money withdrawn. SunTrust claims that Count IV fails to state a claim because a deposit into a bank account is not a bailment. The Court agrees with SunTrust.

Deposits with commercial banks are considered either general or special. *See Dunlop Sand & Gravel Corp.*, 191 A. at 706. In the case of a general deposit, title to the funds deposited in the account passes to the bank, which may commingle the funds with its other assets; a special deposit, in contrast, must be segregated and maintained separately. *See id.* Courts have generally concluded that a "bank becomes a bailee of the depositor" only in the case of a special deposit, for which "the title to the thing deposited" remains with the depositor. *See Marine Bank v. Fulton Bank*, 69 U.S. 252, 256 (1864) (distinguishing between general deposit accounts, which do not create bailments, and special deposit accounts, which do); *Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1107-08 (10th Cir. 2004) (holding that the creation of a general deposit account does not create a bailment); *Merrill Lynch Mortg. Cap. v. Fed. Deposit Ins. Co.*, 293 F. Supp. 2d 98, 103 (D.D.C. 2003) ("General deposits do not operate as bailments; rather, the depositor gives up title when loaning the bank money, allowing the bank to use that money for profit."); *Rozsa v. May Davis Grp., Inc.*, 152 F. Supp. 2d 526, 532 (S.D.N.Y. 2001); *In re Smith*, 382 B.R. 279, 284 (Bankr. D. Md. 2006) (holding that a general deposit at a financial institution "is not a bailment of cash but rather is a contract under which the bank is obligated to pay to the account customer the amount commonly referred to as the account balance, upon a legally sufficient demand by the customer"); *see also Snyder v. Resolution Trust Corp.*, 35 F.3d 557, 1994 WL 489364, at *2 (4th Cir. 1994) (unpublished) (distinguishing between general deposits and special deposits).

The Maryland Court of Appeals has not definitively held that a general deposit does not create a bailment, but it has held that deposits made pursuant to a commercial banking relationship are "presumed to be general unless expressly made special or specific," and that a general deposit creates a debtor-creditor relationship whereby the bank holds the funds as "a

debtor." *Dunlop Sand & Gravel Corp.*, 191 A. at 706, 707. Where Maryland law is consistent with the great weight of authority concluding that a general deposit does not establish a bailment, the Court finds that a general deposit does not create a bailment under Maryland law. Because G&D has not alleged that its account at SunTrust was a special deposit account, G&D has failed to state a plausible bailment claim. Count IV is dismissed.

## VI. Conversion

In Count VI, G&D alleges conversion, under the theory that that SunTrust converted money rightfully belonging to G&D when SunTrust "intentionally and improperly" withdrew money from G&D's bank account and "intentionally and maliciously" failed to return a portion of the withdrawn funds. Am. Compl. ¶ 23. A "conversion" is "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999). As a general rule, money, as an intangible item, is not subject to a claim for conversion. *John B. Parsons Home, LLC v. John B. Parsons Found.*, 90 A.3d 534, 547 (Md. 2014); *see also Lawson v. Commonwealth Land Title Ins. Co.*, 518 A.2d 174, 177 (Md. Ct. Spec. App. 1986) (holding that no conversion claim exists when there is no obligation to return the identical money, but only a relationship of a debtor and a creditor). An exception exists, however, when a plaintiff can allege that the defendant converted "specific segregated or identifiable funds." *Allied Inv. Corp.*, 731 A.2d at 966. The exception could apply where the funds "have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction." *Id.* (quoting 1 Fowler V. Harper *et al.*, *The Law of Torts* § 2.13, at 2:56 (3d ed. 1986)). If, however, the funds are then commingled, they generally lose their "separateness" and cannot support a conversion claim. *John B. Parsons Home*, 90 A.3d at 547.

"In cases where Maryland courts have precluded claims for conversion of funds on the basis that the funds were commingled, the plaintiff either never identified a specific dollar amount that was allegedly converted, or the defendant had no obligation to return those funds in the first place." *See Roman v. Sage Title Grp., LLC*, 146 A.3d 479, 485 (Md. Ct. Spec. App. 2016). Applying these principles, the Maryland Court of Special Appeals recently held that funds placed in an escrow account, even if combined with other funds, could be the subject of a conversion claim where the deposited funds were the subject of separate accounting and by agreement could only be accessed by the plaintiff. *See id.*, 146 A.3d at 487.

In alleging conversion, G&D has asserted the intentional withdrawal of, and failure to return, a specific dollar amount, but it has not asserted that the allegedly converted funds were segregated, identifiable, or kept separate in any way. Specifically, G&D has not alleged that SunTrust removed identifiable funds for a specific purpose, that SunTrust maintained the withdrawn funds in a segregated account, that SunTrust did not commingle the funds without separate accounting, or that SunTrust was specifically required to return the specific funds. It is conceivable that G&D could allege such facts, *see PS Business Parks*, 758 S.E.2d at 512, but no such allegations appear in the Amended Complaint. The Court therefore grants the Motion as to the conversion claim. *See John B. Parsons Home*, 90 A.3d at 547 (affirming dismissal of conversion claim where there was no allegation that the funds were segregated, identifiable, and not commingled). The Court dismisses Count VI without prejudice because G&D may be able to allege additional facts that would establish that the funds were "specifically identifiable enough to be the subject of a conversion claim." *Allied Inv. Corp.*, 731 A.2d at 967.

**VII. Amendment**

During the pendency of the Motion, G&D filed a Second Amended Complaint. Because it was not G&D's first amended complaint, and it was filed more than 21 days after the filing of the Motion, G&D was required to secure the consent of the defendant or obtain leave of the Court to file Second Amended Complaint. Fed. R. Civ. P. 15(a). It did neither.

Accordingly, the Court has not accepted the Second Amended Complaint and hereby strikes it. Because the Court understands that G&D wishes to amend its Complaint again, and because the Court has dismissed Counts I and VI without prejudice, it will grant G&D 21 days to file a Motion for Leave to Amend. The Motion should comply with the requirements of Local Rule 103.6 and attach its proposed Second Amended Complaint, which may contain additional changes beyond those offered in the Second Amended Complaint that was filed but not accepted.

## CONCLUSION

For the reasons stated above, SunTrust's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is DENIED as to Count II (breach of the debtor-creditor relationship). The Motion is GRANTED as to all remaining counts. Count I (breach of the Rules and Regulations) and Count VI (conversion) are dismissed without prejudice; Counts III (breach of public banking laws), Count IV (bailment), and Count V (breach of fiduciary duty) are dismissed with prejudice.

The Court STRIKES G&D's Response to SunTrust's Reply Memorandum, ECF No. 33, G&D's Supplemental Response to Reply Memorandum of SunTrust Bank, ECF No. 39, and its Second Amended Complaint, ECF No. 40, and grants leave for G&D to file a Motion for Leave to File a Second Amended Complaint within 21 days. A separate Order shall issue.

Date: December 22, 2016

THEODORE D. CHUANG
United States District Judge